## SHELL PETROLEUM CORPORATION V. ROYAL PETROLEUM CORPORATION.

No. 7380. Decided March 13, 1940.
Rehearing overruled May 1, 1940.
(137 S. W., 2d Series; 753.)

*R. H. Whilden, Jesse M. Davis* and *Barksdale Stevens,* all of Houston, for plaintiff in error.

The undisputed evidence having shown that the Shell Company had paid to Puckett all sums to which he was entitled to receive from the Shell Company save the sum of $100.12 which said company had tendered into court, the court should have rendered judgment in favor of said Puckett for said sum only and should have discharged the Shell Company with its costs save as to the sum of $3,000 which it had also tendered into court, the ownership of which should be determined as between defendants in error here, no claim being asserted by the Shell Company. The action of the court therefore in rendering judgment for $2,425.00 against the Shell Company in favor of defendants in error and cross plaintiffs Puckett and the bank was error. Dashko v. Friedman, 59 S. W. (2d) 203; Fidelity Union Ins. Co. v. Fowler, 38 S. W. (2d) 128; Dunn v. Tennant, 82 S. W. (2d) 728.

*O. F. Wencker, J. W. Hassell, J. W. Hassell, Jr., Herbert W. Whisenant,* and *S. W. Marshall,* all of Dallas, for defendants in error.

The transfer orders themselves evidence the assignment of amounts stated, payable in the sums per month for a period sufficient, according to such monthly payments, to liquidate the aggregate amounts. Choctaw, O. & T. Ry. Co. v. McLaughlin, 96 S. W. 1091; Perry v. Langbehn, 252 S. W. 472; Stock Yards National Bank v. Wilkinson, 230 S. W. 1040.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit was filed by Royal Petroleum Corporation against B. B. and G. E. Caster, husband and wife, the Republic National Bank & Trust Company of Dallas, Allen K. Puckett, and the Shell Petroleum Corporation. For convenience the parties named will be designated as the Royal, the Casters, the Bank, Puckett, and the Shell.

The controversy arose out of the following facts:

The Casters on July 19, 1932, owned a lease containing about forty-one acres of land in Rusk County, Texas. The Royal on the date mentioned purchased it, paying therefor $1,500.00 in cash, and agreeing to pay a further consideration of "$25,-000.00 payable out of 1/4th of 7/8ths of all the oil and gas produced, saved and marketed from * * * the tract * * * from wells * * * now drilled or to be hereafter drilled thereon."

The Royal, after purchasing the lease, operated it, and delivered the oil produced therefrom to the several purchasers of the oil runs. During all of the time involved the Royal was the operator, and was in charge of the lease and the oil produced therefrom, and its delivery to the various purchasers.

After the Casters conveyed the lease to the Royal they sold partial interests in the $25,000.00 oil-payment to several purchasers, respectively, including Puckett. The sales were evidenced by transfer orders, signed and acknowledged, the first of which to Puckett, reads in part:

"MAGNOLIA PETROLEUM COMPANY

TRANSFER ORDER

"To Magnolia Petroleum Company

Dallas, Texas                                          February 16, 1933

"The undersigned, having transferred, as indicated below, oil production of wells numbered one and up on (here follows description of land covered by lease), you are hereby authorized, beginning * * * on the 1st day of February, 1933, and until further notice, to give credit for oil received on account of said interest so transferred as follows:

Credit to                    Transferred Interest        P. O. Address

Allen K. Puckett          $50.00 per month              *    *    *

"Due on the 12th of each month out of Mrs. G. E. Caster and B. B. Caster's interest, * * *.

"The above payments shall continue for twenty (20) consecutive months or until the total sum of $1,000.00 has been paid Allen K. Puckett, payments to begin March 12, 1933. (here follow signatures of the Casters, attested by witnesses).

"The undersigned certify that they are the legal owners of the interest above transferred and warrant the title thereto, and the Magnolia Petroleum Company is hereby authorized *until further notice* to receive oil for purchase from said parties subject to the following conditions:     *    *    *

"6. Sellers severally agree to notify Magnolia Petroleum Company of any change of ownership, it being understood that

any vendee or assignee of said wells or the production thereof shall take same subject to the terms hereof.".

The foregoing order is signed also by Puckett.

The Casters and Puckett executed five such transfer orders of partial interests respectively out of the $25,000.00 oil payment, aggregating $8,550.00, as follows:

No. 1, dated February 16, 1933, for $1000.00
    payable $50.00 per month;
No. 2, dated March 17, 1933, for $1000.00
    payable $50.00 per month;
No. 3, dated April 25, 1933, for $2550.00
    payable $75.00 per month;
No. 4, dated October 3, 1933, for $1000.00
    payable $50.00 per month;
No. 5, dated February 21, 1934, for $3000.00
    payable $125.00 per month.

They were all acknowledged and filed for record in the deed records of Rusk County.

Subsequent to the sale of the lease by the Casters to the Royal (July 19, 1932), and prior to February 1, 1935, purchasers of the oil produced from the lease paid the Casters and their assigns the total sum of $24,899.88, lacking only $100.12 of being payment in full of the $25,000.00 oil-payment.

The Magnolia was the first purchaser of the oil runs. The Lion Oil Refining Company was its successor as purchaser. The Shell succeeded the Lion as purchaser and was taking the oil runs when this controversy arose in 1935. There was no connection between the companies taking the oil runs. One merely succeeded the other as an independent purchaser.

On March 29, 1934, a short time before the Shell began taking the oil runs (May 21, 1934), Puckett assigned to the bank as collateral to secure his indebtedness to it then or thereafter existing, the five transfer orders, or oil payments, above described (then partly liquidated), payable in the aggregate, at the rate of $350.00 per month. The assignment, among other things, directs and empowers "the purchaser of oil * * * to pay direct to Republic Bank & Trust Company * * * every and all sums of money * * * when and as they become due and payable to Allen K. Puckett * * * by virtue of said oil payments," the oil payments referred to being those evidenced by the five transfer orders above described. It further authorized the bank to receive and collect and apply same to the payment

of Puckett's indebtedness to the bank, present and future. The assignment was duly acknowledged and was recorded in Rusk County on March 30, 1934.

The Shell made no distribution until after it received a division order signed by the respective owners of the parties interests in the $25,000.00 Caster oil payment. After it became the purchaser, it sent to the Royal, the operator of the lease, a blank division order form and requested substantially that the names of those owning partial interests in the working interest of the lease and the respective proportions in which owned, be inserted, and that proper signatures be secured. The request was complied with and the division order, executed by the parties at interest was returned by the Royal to the Shell.

Omitting the unfilled blanks, the names of witnesses, the description of the land covered by the lease, certain immaterial (for present purposes) paragraphs, the postoffice addresses and penciled notations, the division order is as follows:

"DIVISION ORDER

To SHELL PETROLEUM CORPORATION,
St. Louis, Missouri. *June 9th, 1934*

The undersigned certify and guarantee that they are the legal. owners of the oil produced from Wells Nos. 1 and up on the lease (involved herein), including royalty interest, and until further notice you will give credit for all oil received from said wells as per directions below:

| WORKING INTERESTS:<br>CREDIT TO | DIVISION OF INTEREST | POST OFFICE |
|---|---|---|
| McBride, O'Donnell & Hamilton | | |
| (until notified by Royal Petroleum Corporation) 1/32nd of 7/8ths | 7/256ths | |
| E. T. Jones, (until notified by Royal Pet. Corp.) 1/32nd of 7/8ths | 7/256ths | |
| B. B. Caster & G. E. Caster (until notified by Royal Pet. Corp.) 1/4 of 7/8 | 56/256ths | |
| Less $350.00 per month to Republic Natl. Bank & Trust Co. | | |
| Royal Pet. Corp. and R. H. Dearing & Sons 22/32nds of 7/8ths | 154/256ths | |

Shell Petroleum Corporation is hereby authorized until further written notice to receive the oil from said wells for purchase from said parties severally in the proportions named, subject to the following conditions:

First: The oil run in pursuance to this division order shall become the property of the Shell Petroleum Corporation upon delivery thereof to any pipe line designated by it.

Second: The oil received in pursuance to this division order shall be paid for to the party or parties entitled thereto according to the division of interest shown above, at the price for each day's receipts posted on that day by *Shell Petroleum Corporation* for the same kind and quality of oil in the field in which it is received. Settlement therefor shall be made on or before the 12th day of each calendar month for oil run during the preceding month. These payments are to be made in checks of the Shell Petroleum Corporation, to be delivered or mailed to the parties thereto entitled at the addresses above given.

\* \* \* \*

Fourth: Each undersigned hereby warrants and guarantees the title to the oil credited to such undersigned owner according to the division of interest hereinabove indicated, as well as all interest hereafter acquired."

The division order is signed by all of the parties to whom the working interests are credited, including the bank. The bank signed it as "assignee of the interest of Allen K. Puckett."

At the time the Shell became the purchaser of the oil runs (about May 21, 1934) there remained unpaid of the $25,000.00 item the sum of $10,507.81, and there was still unpaid on the aggregate amount of the Puckett interest the sum of $5,125.00. Thereafter, the Shell after receiving the signed division order (dated June 9, 1934) made payments on the Puckett interest beginning July 1, 1934, and continuing monthly thereafter until the payments aggregated the sum of $2,700.00. They appear to have been made to the bank as follows:

| | | | |
|---|---|---|---|
| July 24, | 1934 | - | $350.00 |
| August 14, | 1934 | - | 350.00 |
| September 13, | 1934 | - | 350.00 |
| October 15 | 1934 | - | 350.00 |
| November 14, | 1934 | - | 300.00 |
| December 13, | 1934 | - | 250.00 |
| January 14, | 1935 | - | 250.00 |
| February 13, | 1935 | - | 250.00 |
| March 30, | 1935 | - | 250.00 |
| | | | $2,700.00 |

The instrument whereby the Casters conveyed the lease in question to the Royal, provides, in addition to the consider-

ation of the promise to pay $25,000.00 out of 1/4 of 7/8 of the oil produced from the lease, that the payments shall be made *"if, as and when the oil is produced, saved and marketed."* (Italics ours.)

The Shell, after completing payment of the full amount of the $25,000.00 item, except the $100.12, so notified the Royal. It is uncontroverted that in completing the payment it did so by making monthly payments aggregating $2,700.00 as itemized above. Nor is it controverted that upon the completion of the payments the five Puckett interests evidenced by the transfer orders, the aggregate of the amounts paid thereon, was less than the sum of $8,550.00 by $2,425.00. No contention is made that the Royal is not entitled to all of the oil production after the $25,000.00 item has been paid.

It is uncontroverted also that both the Royal and Puckett, after the Shell notified the Royal that payment of the amount of the $25,000.00 remaining unpaid when it began taking the oil had been completed, asserted their claims respectively, Puckett asserting his right to receive the $2,425.00, and the Royal asserting its right to receive the entire amount held by the Shell over and above the $25,000.00 which had been paid.

Controversies arising out of the facts stated above, and the Shell's unwillingness, in view thereof, to make further payments either to the bank on the Puckett interest, or to begin making payments to the Royal, brought about the filing of the suit.

The following excerpt from the opinion of the Court of Civil Appeals sets out a condensed summary of the voluminous pleadings of the parties:

"The Royal alleged that sufficient oil having been produced and sold to pay in full the item of '$25,000.00 purchase money recited in the deed to it by the Casters, it was entitled to releases, and had demanded of interested parties receiving payments the execution of suitable releases, freeing the leasehold from the implied lien; alleging the refusal of the parties to execute same; also alleged in detail facts, not necessary to be repeated, praying that, on final hearing, the court adjudicate that the parties (the Casters, The Bank, Puckett, and The Shell) owned no further interest in the leasehold, or in the oil produced therefrom; and that the clouds cast upon the title, by reason of their previously existing claims, be removed, and that plaintiff have judgment against The Shell for the

value of the oil produced in excess of the amount necessary to satisfy the said $25,000.00 indebtedness.

"Puckett answered the main suit and filed a lengthy cross-action against The Royal, the Casters, The Bank and The Shell, alleging in detail the material facts involved, showing that, although The Shell had purchased a sufficient quantity of oil from the lease to pay his claim, it had failed to do so, lacking $2,425.00 of paying the full amount due, but instead paid the same to the Casters, for which amount, Puckett prayed judgment against all the parties named in his cross-action. * * *

"The Shell pleaded at great length, contending in effect that, it had paid the proceeds of all oil purchased in strict accordance with the terms and provisions of the Division and Transfer Orders, and that payments as made, fully discharged it from all liability to Puckett. Also filed a cross-action against the Casters and The Royal, praying in the alternative that, if judgment should be rendered against it in favor of Puckett, that judgment be rendered in its favor over against said cross-defendants for the amount of the judgment so rendered, etc. * * *."

The bank and Puckett did not plead antagonistically against each other. Puckett sought no affirmative relief against the bank. The bank sought no affirmative relief against Puckett. It alleged merely the assignment of March 29, 1934, made by Puckett to it for collateral purposes, and payments under the assignment, alleging in this connection its receipt from the Shell of the $2,700.00 in monthly payments as above itemized.

The Casters filed no answer and entered no appearance of any kind.

The Shell in its first amended original answer admitted that the companies taking oil from the premises had paid to the Casters and their assigns, including Puckett and the bank as his assignee, the full sum of $25,000.00 less the sum of $100.12 then in its possession, alleging that it was holding same for such of the indebtedness as might be entitled thereto, and tending such sum into court to be paid out in accordance with any judgment * * * the court might render." It admits also that it had on hand, accrued as of August 1, 1935, from 1/4 of 7/8 of the oil produced and purchased by it, the sum of $3,000.00 to which claim was being asserted by both the Royal and Puckett, and alleges that on account of the conflicting claims it is tendering, and does tender into court, this sum also to be paid out in accordance with the court's judgment.

The Shell pleaded, and attempted to prove, that it was custom in the oil industry in Texas and generally in the United States for operators of oil properties which are operated in accordance with the obligations entailed by the instruments set out to keep purchasers of oil produced from such properties, advised as to the application of the purchase money toward the liquidation of the outstanding oil payments, and that this custom was recognized and adopted by the parties in this cause. The testimony upon this issue is conflicting and the trial court's finding that "no such custom" existed, is final, and need not be further mentioned.

It should be added that other than the conflict referred to the material facts are in no wise in conflict.

Upon trial of the case without a jury the court rendered judgment in favor of Puckett and the bank (assignee) against the Shell for $2,425.00, and against the Casters, jointly and severally, for the same amount. It also rendered judgment in favor of the Shell over against the Casters, jointly and severally, for a like amount ($2,425.00), but provided that execution should not issue on the judgment in favor of the Shell against the Casters until the Shell had paid the judgment against it in favor of Puckett and the bank. The court further adjudged that the Royal recover of and from the Shell and all other parties to the suit the sum of $3,000.00 tendered into court, that title of the Royal be discharged of the claim for unpaid purchase money recited in the conveyance by the Casters to the Royal and by reason of the previously existing claims of parties, be removed.

The judgment so decreeing was affirmed by the Court of Civil Appeals. 111 S. W. (2d) 1178. Writ of error was granted upon application of the Shell.

The principal holding of the trial court upon which its judgment was rendered, and upon which it was affirmed upon appeal, is that the Shell "without any authority" from Puckett or the Royal paid the Casters $2,425.00, which, according to the view of the courts below, Puckett and the bank were entitled to receive from the Shell.

We are in accord with the view expressed by the Court of Civil Appeals that the judgment upon the holding stated is "pivotal," and settles the main controversy; and that as a consequence all subordinate issues presented in cross actions by the parties against each other are settled. We are not in accord, however, with the view either that the Shell's payments to the Casters and their assignees were made without au-

thority, or that Puckett and the Bank are entitled to receive from the Shell the sum of $2,425.00, or to receive from it any sum other than the $100.12 tendered into court by the Shell. The provisions of the instruments above set out and referred to, particularly of the conveyance by the Casters to the Royal of the transfer orders executed by the Casters and Puckett, and of the division order.

Puckett does not contend that the Royal is not entitled to receive the proceeds of the oil produced, over and above $25,-000.00, or that this amount has not been paid to the Casters and their assignees, including himself and the bank, except, of course, the $100.12 tendered into court. His principal contention is that inasmuch as he and the bank, as his assignee, lack $2,425.00 of having received the sum of $8,550.00, the Shell should continue making monthly payments upon the interests tranferred to him out of the $25,000.00 interest until the sum of $2,425.00 has been paid.

His contention is predicated upon the view that the stipulation of the transfer orders that the "payments shall continue for" the stated number of "consecutive months; or until the total sum of" the stated amount "has been paid" to him, means that the payments shall continue for the stated number of consecutive months, *and* until the total sum remaining unpaid ($2,425.00) has been paid. He contends, stating it another way, that the word "or" as used in the stipulation, is explanatory, and that in the clause in which it is used it means "that is to say"; and that by substituting this phrase for "or," requires that the above payments shall continue monthly for the stated number of "consecutive months," until the total sum of $2,425.00 has been paid to him. We cannot agree with the contention stated.

■ In its ordinary use the term "or" is disjunctive, and alternative in its effect. See the analogous cases of Oxsheer v. Watt, 91 Texas 402, 44 S. W. 67. Unless there is some impelling reason apparent in the context, it should be given its ordinary, rather than a conjunctive meaning. Id.; Lunt v. Aetna Life Ins. Co., 261 Mass. 469, 159 N. E. 461; Gayner v. Standard Accident Ins. Co., 217 Mass. 86, 104 N. E. 339, L. R. A. 1916a, 363. We find nothing in the text indicating, as urged by Puckett and the bank, that "or" as here used in the alternative stipulated, is explanatory and means "that is to say." Nor is there any impelling reason in the context for giving the word "or" any other than its usual meaning.

■ The Casters, it will be observed, part with no right to receive the full sum of $25,000.00, except as evidenced by the terms of the transfer orders. It follows from this as a corollary that Puckett acquired no right to monthly payments after the $25,000.00 oil payment had been discharged. It is therefore manifest that the legal effect of the provisions of the transfer orders is to transfer to Puckett monthly payments subject to cessation of payment upon discharge of the $25,000.00 out of which the Puckett interest is payable. In other words the transfer orders transfer monthly payments payable consecutively so long as any balance of the $25,000 remains unpaid.

The alternative stipulation discussed above prevents cessation of payment so long as the proportionate part of production applicable to the liquidation of it and the $25,000.00 interest does not amount to as much per month as Puckett's stipulated monthly sum. There is no stipulation, however, in the transfer orders requiring application of more than the stipulated monthly sum of the Puckett interest in the event the proportionate part of applicable production amounts to more than that. In the absence of such stipulation the excess is payable toward the discharge of the amount remaining unpaid on the $25,000.00 interest.

It is clearly provided in the conveyance from the Casters to the Royal that payments toward the liquidation of the $25,-000.00 are to be made *"if, as and when the oil is produced, saved and marketed"* (Italics ours), from which it follows that such excess, whether much or little, is applicable to discharge such unpaid amount. In such contingency it is manifest that the ultimate limit of the Puckett interests ($8,550.00) pays out less rapidly than the remaining $25,000.00 interest.

The contingency last referred to actually materialized. Production increased. It is uncontroverted that there was only one producing well on the property when the Royal purchased the lease. There were five when the Shell began making distribution of the proceeds of the oil about July 1, 1934, and by the time the $2,700.00 was paid there were nine. Puckett himself testified that the Magnolia was taking the oil when he purchased his first partial interest in the $25,000.00 oil payment; that every month subsequent to that time he was furnished oil run statements showing the amount of production, first by the Magnolia, later by the Lion, and finally by the Shell; that each and every time he obtained a transfer order from the Casters he procured from the Royal figures as to the approximate balance due on the $25,000.00 oil payment; that he could tell from the monthly run statements furnished him

that production was increasing in amount; that the statements from the Shell toward the end showed "quite an increase" in production; that they were sent to his bank and were by the bank furnished to him; that he was indebted to the bank far in excess of $2,425.00, and that the bank was getting the statements monthly and was getting the money due him.

■ The instruments of conveyance above referred to were duly filed for record in Rusk County, and charged the parties with notice of their respective stipulations and provisions.

It will be noted that by the terms of the conveyance of the lease by the Casters to the Royal a limit of $25,000.00 is placed upon the amount of the oil payment to be paid out of oil production on the Caster $25,000.00 oil payment. The conveyance itself stipulates in this connection that *until said sum of $25,-000.00 has been received by grantors* the purchaser is authorized to pay to the grantors the purchase price "of 1/4 of 7/8 of the oil * * *, *said payments to be made as, if and when the oil is produced, saved and marketed.*"

The division order directs the Shell that "until further notice you will give credit for all oil" received from the lease, to the owners of the working interests named therein in the proportions stated; that is to say, it directs the Shell, so far as the Caster-Puckett interests are concerned, to give credit to the Casters until notified by the Royal, 1/4 of 7/8 of the proceeds of the oil produced, "less $350.00 per month to Republic National Bank & Trust Company," until "notified by the Royal Petroleum Corporation."

■ Puckett makes some contention that he did not sign the division order, but is not disputed that it was signed on his behalf by the bank as his assignee and that he, month after month, received notice that his obligation to the bank was being credited with payments made from the oil runs. As stated in the opinion of the Court of Civil Appeals, the interests of the bank and Puckett are not antagonistic. Puckett makes no contention that the bank was not authorized to sign the division order as above stated, and Puckett testified that "beginning June, 1934, and terminating January, 1935, the monthly oil run statements were forwarded to him "from time to time as the * * * bank received them." He is not in position, under the record before us, to now assert as against the Shell that he is not bound by the directions contained in the division order.

After receiving notice from the Royal that the $25,000.00 item lacked only $100.12 of being liquidated, the Shell made no further payments to any of the owners named in the division

order, and tendered into court, but after suit was filed, that amount, together with the sum of $3,000.00.

It follows from what has been stated that under the record before us the Court of Civil Appeals erred in affirming the trial court's judgment awarding judgment against the Shell in favor of Puckett and the bank. It follows also that since the judgment against the Shell is erroneous the cross action decrees predicated thereon are also erroneous.

We hold that the Court of Civil Appeals did not err in affirming the trial court's judgment for $2,425.00 in favor of Puckett against the Casters. This holding is predicated not upon the view that the Casters were overpaid by the amount recovered against them, but because they filed no answer in the case, entered no appearance therein, and prosecuted no appeal from the judgment, thereby permitting it to become final in the trial court.

We hold that the judgment of the trial court as between Puckett and the Shell should have been in Puckett's favor for $100.12, together with his costs; and that the court in this connection should have directed that the sum of $100.12 be paid the bank as assignee of Puckett.

We also hold there was no error in that portion of the trial court's judgment awarding the Royal judgment against the Shell and all other defendants for "the sum of the $3,000.00 tendered into court," and in declaring its title "free and discharged of all claims and liens," *to the extent that they are asserted to arise from the payment of that part of the* $25,000.00 *remaining unpaid* when the Shell began distributing the proceeds of the oil runs applicable to the payment of such remainder, but we hold in this connection that it was erroneous to decree that the Royal's title be declared free of liens other than such as arose out of payments of the amount of the $25,000.00 remaining unpaid at the time stated.

These holdings determine all of the material questions presented.

We accordingly affirm that part of the judgment of the Court of Civil Appeals which affirms the judgment of the trial court in favor of Puckett against the Casters for $2,425.00. In all other respects the judgments of the courts below are reversed and set aside, and the cause is remanded to the trial court for entry of a judgment in accordance with this opinion.

The judgment is affirmed in part and is reversed and remanded in part with instructions.

Opinion adopted by the Supreme Court March 13, 1940.

Rehearing overruled May 1, 1940.