## PHILLIPS PETROLEUM CO. et al. v. RUDD et al.

### No. 6457.

Court of Civil Appeals of Texas. Texarkana.
Oct. 6, 1949.

(On Rehearing Dec. 1, 1949.

Further Rehearing Denied Dec. 29, 1949.

E. H. Brown, Houston, R. K. Batten, Houston, C. R. Newland, Gladewater, Don Emery, Bartlesville, Okl., Rayburn L. Foster, Bartlesville, Okl., R. B. F. Hummer, Bartlesville, Okl., for appellants.

Ernest F. Smith, Marshall, for appellees.

LINCOLN, Justice.

Appellees brought this suit against the appellants to cancel an oil and gas lease on 200 acres of land in Harrison County. The main contention on this appeal is that the evidence is insufficient to support the verdict of the jury and the judgment of the court, and that the trial court erred in refusing appellants' motions for an instructed verdict.

The lease in question was dated March 13, 1943, and was for the primary term of five years. On March 8, 1948, the parties in interest executed an amendment to the lease, amending Paragraph 2 thereof, so as to extend the primary term for one additional month from its original expiration date, "and as long thereafter as lessee is engaged in drilling or re-working operations thereon with no cessation of more than thirty (30) consecutive days." If operations should result in the production of oil, gas or other mineral, then the lease was to continue so long thereafter as such products were produced from the land or from land with which it was pooled.

Paragraph 5 of the original lease also carried the following provisions: "If at the expiration of the primary term oil, gas or other mineral is not being produced on said land but the lessee is then engaged in

drilling or re-working operations thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days."

A well was drilled on the land and was completed on May 8, 1948. However, it was not a producer of oil or gas on the first test, although there was a showing of both. Efforts were continued to bring in the well as a producer, and on May 18 an official test was made by the Railroad Commission of Texas. The finding was negative.

The appellees, owners of the fee simple title, brought this suit to cancel the lease on the ground that there had been a cessation of drilling or re-working operations for more than thirty (30) consecutive days between April 13 and October 7, 1948, the first date being the expiration date of the primary term of the lease as amended and the second date is when the suit was filed. However, if there was any cessation of drilling or re-working operations for more than thirty consecutive days, such cessation occurred between June 10 and July 20, 1948, and this is the contention on the part of appellees.

Appellees presented only three fact witnesses. It would serve no useful purpose to set out in detail the testimony of these three witnesses, in view of the disposition we are making of the case. At the conclusion of all the evidence the court submitted only one issue, which, with its explanatory statement, is as follows:

"Do you find from a preponderance of the evidence that the defendants failed to engage in drilling or re-working operations on the land and premises in question with no cessation for more than thirty (30) consecutive days for any period of time from April 13, 1948, to October 7, 1948?

"You are instructed that after the Rudd-Hall well was completed and failed to produce on its original test, any and all efforts, acts, work or operations thereafter done in or on said well in a good faith effort to cause said well to produce oil or gas in paying qualtities are to be considered by you as re-working operations as that term is used in Special Issue No. 1."

To this issue the jury returned an affirmative answer. The Supreme Court in the well-considered case of W. T. Waggoner Estate v. Sigler Oil Co., 117 Tex. 509, 19 S.W.2d 27, held that implied obligations in an oil and gas lease are neither limitations nor conditions subsequent, and their breach merely gives rises to an action for damages, and does not ordinarily terminate the lease. We are not to be understood as taking the position that the lease cannot be terminated by cessation of operations for thirty (30) consecutive days as provided for in the lease, as it is not necessary for us to pass upon that matter. However, to accomplish this result, the cessation must be complete. The written lease lays down no rule to determine what constitute cessation. The language of the clauses under consideration does not make the duration of the grant depend upon the degree of diligence to be exercised in the operations, nor the character or effectiveness of such operations, the number of employees to be used, hours or days of work, nor even is it specified that good faith must underlie such efforts. There is no provision for reversion or defeasance. The language chosen by the parties is, there must be no cessation of drilling or re-working operations of more than thirty consecutive days. When it was shown that at the expiration of the primary term, April 13, 1948, a well was then being drilled for oil or gas, the burden was on appellees to prove there was a cessation of operations in such efforts for more than thirty consecutive days. Such requirement of proof is not met by showing operations for part of the time, or that the operations done were not of the character calculated to bring in a well. Whatever facts were shown by appellees in these regards went to negative rather than to sustain their cause of action. Since the parties did not choose to use language or insert provisions in their contract which would furnish a rule for themselves and for the court, we have no other alternative than to construe the quoted provision as above. It

is not ambiguous. When it says there must be no cessation of operations, it means simply that there must be no work of any kind done on the well to authorize cancellation, if we concede that cancellation could thereby result.

The testimony of appellees' three main witnesses shows that after May 18, 1948, the big drilling rig was moved off and a smaller work-over rig was moved in; that a "draw-works" was brought in, that the tubing was pulled, that a packer was set, that the well was swabbed more than once; and that it was acidized. Other testimony of appellees' witnesses could be produced, but the foregoing is sufficient to show that re-working operations were in fact carried on. If such efforts were made between June 10 and July 20, the only period in which cessation is claimed, then appellees failed in their proof. The facts on that point are brief.

W. E. Hall, one of appellees' witnesses, testified he visited the well each week after May 18. He stated the small rig was moved in, but had no idea of when that was done. He saw swabbing truck at the well between June 10 and July 20, and saw several people there. His testimony shows the well was acidized.

Barry Rudd, not a party, but a son of appellee W. L. Rudd, says he was in the vicinity of the well frequently. He says the drilling rig was moved and a smaller rig was brought in, but he didn't remember the date, some time in May.

O. A. Stephens, a witness for appellees, lives in Louisiana. He was engaged on two other oil wells in the vicinity of the Rudd-Hall well. His house was about 440 yards from the road that leads to the Rudd-Hall well. He lived in that house from February to August 31. While working at the Boynton well he was requested by an official of one of the appellants to go up to the Rudd-Hall well and open the valve to see if it would flow. His testimony is that he went to this well every day for about three weeks and opened the valve. According to his testimony the work-over rig was moved in about fifteen or twenty days after the big rig was moved off. The big rig was moved off some time after May 18. Stephens says that a smaller rig was then moved in, that a small "draw-works" was also brought in, that the tubing was pulled, that they set a packer in the well, and they swabbed the well; that they took out the first work-over rig and put in another; and that the well was acidized. His testimony thus shows that the first work-over rig was moved in about 15 to 30 days after May 18, and that he was performing work at the well every day for about three weeks thereafter.

Thus, the foregoing testimony of appellees' witnesses affirmatively shows that during the period June 10 to July 20, operations were going on. If there was a cessation the period of it is not shown.

The testimony on the part of witnesses for appellants shows in detail efforts that were made to bring in the well, long and continuous efforts covering the period of time involved. The testimony for the appellants overwhelmingly shows that there was no complete cessation of operations. In rebuttal appellees called an expert witness on re-working operations, and this witness was asked in detail about the efforts made by the appellants, and he confirmed that such efforts would constitute a re-working of the well.

In Gulf C. & S. F. Ry. Co. v. Anderson, Tex.Civ.App., 126 S.W. 928, 929, it is said: "It is well-settled law in this state that the submission of an issue made by the pleadings, where no evidence tending to sustain it has been introduced, is an error calculated to mislead the jury and requires a reversal of the judgment."

In the case of Fort Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S.W. 1130, 1132, the Supreme Court quotes with approval the following: "No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption."

In the Waggoner Estate case, supra, Judge Greenwood used language which we

think is applicable to this case [117 Tex. 509, 19 S.W.2d 30]:

"The court ought not to conclude that the parties intended to prescribe a test for termination of the interests granted which could only be applied with the utmost uncertainty or confusion. Yet, if reasonable diligence in performing every one of the lessee's exploring, developing, producing, and marketing operations was the test, neither lessor nor lessee could at any time have clearly or certainly known whether the estate granted was alive or ended. Such a test must inevitably diminish—if not destroy—the value of the rights of all parties derived from a mineral lease.

"Considerations like the above have in duced the courts to very uniformly refuse to regard obligations lacking in definiteness and certainty as introducing into grants conditions subsequent or limitations leading to forfeiture or termination of vested estates."

On the ultimate fact issue of whether there was a cessation of operations for more than thirty consecutive days, appellees' witnesses gave in the main negative testimony. They state no facts sufficient to show themselves qualified to express their conclusions that there was such cessation of work. Such evidence is not sufficient basis for the jury verdict rendered. Gulf C. & S. F. Ry. Co. v. Anderson, supra; Fort Worth Belt Ry. Co. v. Jones, supra.

The evidence affirmatively shows that at the time of the trial the well was producing oil in paying quantities; that between $75,000 and $100,000 had been expended for that purpose, that re-working operations had gone forward notwithstanding the filing of this suit. We find that the appellants were exerting, at least, reasonable efforts to bring in a well that would produce oil or gas in paying quantities. We believe that the evidence should be clear, convincing and satisfactory, before a judgment is rendered cancelling this lease. The evidence in this case does not measure up to these requirements. The record as a whole presents a case where the overwhelming weight and preponderance of the testimony is contrary to the verdict of the jury and the judgment of the court. The points of error discussed are sustained.

The case having been fully developed, the judgment of the district court is reversed and judgment is here rendered in favor of the appellants.

Reversed and rendered.

## On Rehearing

Appellees' motion for rehearing asserts that this court has erred in holding that in order to keep the lease in effect after the expiration of its primary term without production, the operations of the appellants need not be in good faith, nor of such a nature as were calculated to bring in a well or to result in production. We have not so held. The issues mentioned were not involved in this appeal. They were not raised in the trial court nor in this court. A reading of the foregoing opinion will disclose that we merely pointed out that the *contract for extension* executed March 8, 1948, did not specify that good faith must underlie the efforts of appellants in reworking operations, nor did it require that such operations should be of a nature calculated to bring in a well or to result in production. In so saying we were calling attention to the lack of the agreement to provide a test by which the parties, as well as courts, might be governed in determining whether there was or was not a cessation of operations.

However, upon further consideration we have concluded that the case should be remanded to the district court for another trial. Appellees' motion for rehearing asserts error in our holding that the case has been fully developed, and says that it is capable of further proof. This may be true. It has not been controverted by appellants. Since our holding that the evidence is insufficient to support the verdict of the jury and the judgment of the court, we have concluded that it is our duty under the law to reverse and remand the case for another trial. See Childre et ux. v. Casstevens, 1949, 224 S.W.2d 461, decided by the Supreme Court, and not yet reported in State Reports.

Accordingly appellees' motion for rehearing is granted to the extent that our order rendering judgment for the appellants is set aside, and the case is reversed and remanded to the district court for another trial.