**Willie Ida WAINWRIGHT et al., Appellants,**

v.

**W. C. WAINWRIGHT, Appellee.**

No. 16344.

Court of Civil Appeals of Texas.

Fort Worth.

July 13, 1962.

Rehearing Denied Sept. 14, 1962.

Jennings, Montgomery & Dies, and Frank Jennings, Graham, for appellants.

Rogers, Eggers, Sherrill & Pace, William F. Smith and Guy Rogers, Wichita Falls, for appellee.

BOYD, Justice.

W. C. Wainwright and Willie Ida Wainwright were divorced on December 3, 1959. At that time they were and continued to be joint owners of the leasehold estate on a tract of land in Archer County. Following the divorce, W. C. Wainwright continued to operate the lease, producing oil therefrom in paying quantities, until in February, 1960, he voluntarily shut down the wells, and, according to the theory of Mrs. Wainwright, he did not thereafter produce any oil or gas.

The lease contained the following provision: "It is specially agreed that in the

event that oil or gas is being produced or is obtained from said premises after the expiration of the primary term hereof and said production shall for any reason cease or terminate, lessee shall have the right at any time within ninety (90) days from the cessation of such production to resume drilling operations in the effort to make said leased premises again produce oil or gas, in which event this lease shall remain in force so long as such operations are continuously prosecuted, * * * and if they result in production of oil or gas, so long thereafter as oil or gas is produced from the premises."

Early in June, 1960, when she believed that production had ceased for more than 90 days, and that the lease had terminated, Mrs. Wainwright arranged with the owners of the land to secure another lease. The new lease was made to her as lessee upon condition that it be found that the prior lease had terminated. After securing the agreement for the lease, and before it had been executed, Mrs. Wainwright, with the assistance of her son, who had experience in oil field work, put the wells back into production. The new lease was dated June 29, 1960, but was not signed and acknowledged by all the parties until the latter part of July.

Mrs. Wainwright brought this suit against W. C. Wainwright in trespass to try title, and contends that she is the sole owner of the leasehold estate, and that all rights formerly held by her and W. C. Wainwright under the prior lease had ceased to exist. The Peters heirs, who are the landowners, intervened and claimed that the original lease had terminated. Both of the Wainwrights moved for instructed verdict, and the defendant's motion was sustained. Judgment was rendered that the original lease had not terminated; and if it had, Mrs. Wainwright held the leasehold estate under the new lease in trust for herself and W. C. Wainwright. Mrs. Wainwright and the Peters heirs appeal. Mrs. Wainwright will be referred to as appellant, and W. C. Wainwright as appellee.

Appellee testified several times that he did not produce any oil or gas after February 28 or 29, 1960. There was other evidence that the operations were shut down continuously from the latter part of February until appellant started operations about June 14. However, an issue as to whether there was a complete cessation of production for 90 days was made by appellee's statement in one part of his testimony that he produced some oil in March and April.

The primary term of the lease had expired at the time the parties were divorced. Appellee was then operating the lease. He continued to do so, without any agreement with appellant, and without consulting her, until he ceased operations in February, 1960. He did not consult her about shutting down. He did not notify her that he would or that he had shut down. He testified that he ceased operations because he was tired of playing Santa Claus. A witness testified that he heard appellee say that the Peters lease would be one lease appellant would be sorry she had an interest in.

We think the lease terminated if production was voluntarily discontinued by appellee for more than 90 days. Guerra v. Chancellor, Tex.Civ.App., 103 S.W.2d 775, error refused; Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783, 137 A.L.R. 1032; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509; Woodson Oil Co. v. Pruett, Tex.Civ. App., 281 S.W.2d 159. In the last cited case there was involved a lease very similar to the one before us, except that it provided only 60 days for resumption of operations after cessation. The court said: "Appellants next contend that the cessation of production on the lease was sudden and only temporary, and that under such circumstances they were entitled to a reasonable time in which to remedy the defect and resume production. This might be true under the terms of some leases, but under the lease here the parties agreed and stipulated what would constitute temporary cessation. The lease provides, in effect, that if production should cease the lessee must commence reworking or additional operations within

sixty days or the lease would terminate. If the cessation of production is for more than sixty consecutive days it is not to be regarded as temporary under the terms of this lease. If re-working or additional operations are not begun within the sixty-day period the lease terminates by its own provisions."

In his contention that production had not ceased, appellee strongly relies on Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 724, affirming Clifton v. Koontz, Tex.Civ.App., 305 S.W.2d 782, wherein it was said: "In the case of a marginal well, such as we have here, the standard by which paying quantities is determined is whether or not under all the relevant circumstances a reasonably prudent operator would, for the purpose of making a profit and not merely for speculation, continue to operate a well in the manner in which the well in question was operated." The question in that case was whether production in paying quantities had ceased. In our case the question is whether all production had ceased for 90 days. The wells were producing, and in paying quantities, until appellee voluntarily discontinued operations. We do not think the holding in Clifton v. Koontz has application here. We do not ascribe to that holding the meaning that if an imprudent operator shuts down a well which is producing in paying quantities, it cannot be said that production has ceased so long as a prudent operator would have continued production. If that be so, a good well could be shut down for "days, weeks, or months", or time unlimited, without cessation of "production"; and it would seem that the better the well the longer an imprudent operator could refuse to produce without danger of losing the lease. Moreover, it was said in that case "We agree with petitioners that if production in paying quantities ceased, the 60-day clause applies."

█ If the first lease terminated, we do not think the second lease is held by appellant in trust for appellee and herself. Appellee caused the first lease to terminate without any inducement upon appellant's part. The relationship theretofore subsisting between the parties ceased. Keystone Production Co. v. Pace, Tex.Civ.App., 41 S.W.2d 731, error refused; Collins v. Gee, Tex.Civ.App., 107 S.W.2d 754, error refused; MacDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334.

Believing that in granting appellee's motion for instructed verdict the learned trial court fell into error, the judgment is reversed and the cause remanded.