George SAMANO et al., Petitioners,

v.

SUN OIL COMPANY et al.,
Respondents.

No. B–9969.

Supreme Court of Texas.

Sept. 16, 1981.

Rehearing Denied Oct. 21, 1981.

Head, Kendrick & Head, Hayden W. Head and Michael Kendrick, Jr., Corpus Christi, for petitioners.

Kleberg, Dyer, Redford & Weil, Lev Hunt and Clayton J. Hoover, Corpus Christi, for respondents.

POPE, Justice.

George Samano and others (hereafter called Samano), as lessors of an oil and gas lease, sued Sun Oil Company and Tanya Oil Company (hereafter called Sun), as lessees, for a declaratory judgment that the lease had expired; because, during the secondary term, there was neither production nor any drilling or reworking operations for a continuous period of seventy-three days. The question presented by the case is whether a sixty-day limitation period for drilling or reworking operations was applicable to the secondary term of the lease. The trial court granted lessor, Samano, a summary judgment, holding that the lease had terminated. The court of civil appeals, with a divided court, reversed that judgment, 607 S.W.2d 46, holding that the sixty-day requirement in the drilling or reworking clause applied only to operations in progress at the end of the primary term. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Paragraph 2 of the Samano lease is an early habendum clause which also includes a continuous drilling or reworking clause. Paragraph 2 of the lease provides:

2. Subject to other provisions herein contained, this lease shall remain in force for a term of ten years from this date, called primary term, and as long thereafter as oil, gas or other mineral is produced from said land, or as long thereafter as Lessee shall conduct drilling or reworking operations thereon with no cessation of more than sixty consecutive days until production results, and if production results, so long as any such mineral is produced.

Samano and Sun executed the lease on March 29, 1934, so the ten-year primary term ended March 29, 1944. Production in paying quantities extended the lease beyond the primary term and until May 4, 1977, when production stopped. Sun did nothing to restore production until July 15, a continuous period of seventy-three days. Sun urges that the cessation of drilling or reworking operations for the seventy-three days was a temporary cessation.

This court has held that, absent an express time limitation in the lease for continuous drilling operations, a temporary cessation of production after the primary term does not terminate the estate when the production stops because of some mechanical breakdown in the equipment. *Amoco Production Co. v. Braslau*, 561 S.W.2d 805 (Tex.1978). That rule was a negative corollary to the rule that a lease terminates upon a cessation of production for an extended period of time after the primary term. *Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783 (1941). Ours is a question of construing the lease clause, quoted above, to determine whether the express sixty-day time limitation controls this case. *See, Woodson Oil Co. v. Pruett*, 281 S.W.2d 159 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.); *Haby v. Stanolind Oil & Gas Co.*, 228 F.2d 298 (5th Cir. 1955); 3 H. Williams, Oil and Gas Law § 616.2 (1980).

Standard rules of English show that paragraph 2 was carefully drafted and that its meaning is clear and easily breaks into three parts. These are the three divisions of the clause: [1]

Subject to the other provisions herein contained, this lease

(1)

shall remain in force for a term of ten years from this date, called primary term, (March 29, 1944 was end of term)

(2)

and as long THEREAFTER as oil, gas or other mineral is produced from said

1. The parenthetical notes are added.

land, (May 4, 1977 was last day of production)

(3)

or as long THEREAFTER as Lessee shall conduct drilling or re-working operations thereon with no cessation of more than sixty consecutive days until production results, so long as any such mineral is produced. (July 3, 1977, was the end of the sixty-day period).

Sun and the majority of the court of civil appeals have ignored this division and more particularly, they have ignored the word "thereafter" which was used not once, but twice, each time with a meaning and a reference to what had gone before.

The draftsman stated three distinct things which would prolong the term of the lease. The habendum clause first provided for a ten-year primary term. "Thereafter," meaning "after that," or after the duration of the primary term, the lease would continue in force as long as there was production. We are now into the secondary term, when we reach the third provision. That provision is the continuous drilling or reworking clause, and it looks back upon the two prior habendum provisions, the one for the primary term and the other one for its extension into the secondary term by production. It then states that the duration of the lease can be extended even further. We know this because the second "thereafter" now refers to what has already been stated. It was not until both methods (1) and (2) for extending the life of the lease were stated in the habendum clause that the lease provided for yet a third extension, that is, "thereafter by drilling or reworking operations." An inseparable part of this drilling or reworking clause was that there could be no cessation of drilling or reworking operations for more than sixty days—not seventy-three days.

Sun quotes a number of textbooks on English grammar in support of its contention that modifiers are intended to refer to

the words closest to them in the sentence.[2] That, of course, is the correct rule. It was not observed by the court of civil appeals. The rule concerning modifiers is:

> The reader naturally assumes that the parts of a sentence which are placed next to each other are logically related to each other.... The rule which will guide you may be stated in two parts: (1) place all modifiers, whether words, phrases, or clauses, as close as possible to the words they modify; (2) avoid placing these elements near other words they might be taken to modify.[3]

Another statement of the rule of grammar is: "Place modifiers so that they will be connected immediately with the words they modify."[4] "Thereafter" is an adverbial modifier, but Sun ignores it entirely. The first "thereafter" refers to the primary term clause that is nearest to and is the only thing that has gone before. The second "thereafter" also refers to what has gone before and is nearest. That is the clause which extends the lease by production. The thing that will accomplish the extension of the lease "thereafter" and beyond the production period is drilling or reworking operations with no cessation of more than sixty days. Consistent with good English, the first "thereafter" refers to the extension of the primary term; and the second "thereafter" reasonably refers to both—not just one—of the prior statements about duration of the lease.

If, as urged by Sun and held by the majority of the court of civil appeals, the clause requiring drilling or reworking within sixty days applies only to operations in progress at the end of the primary term; according to the grammar books, the drilling or reworking clause would have followed next and immediately after the clause stating the ten-year primary term. Instead, consistent with the rules of grammar, the drilling or reworking clause within sixty days is next to and immediately after the part of the habendum clause concerning the secondary period by production. The court of civil appeals erroneously leaps over that clause to apply the second "thereafter" exclusively to the primary term clause.

This court has already decided, and correctly so, that the drilling or reworking clause, including its express limitations by time, applies to operations in progress at the end of the primary term. While rules of good English are not always controlling, under those rules there is stronger reason for holding that the drilling or reworking clause within sixty days applies to the instance of cessation of production during the secondary term, than there is for holding that the clause only applies to the operations in progress at the end of the primary term.

The better, consistent, and more workable rule would be to apply the same rule to both parts of the habendum clause—that is, to operations at the end of the primary term and also the cessation of production during the secondary term, both of which immediately are followed by the sixty-day drilling or reworking clause.

This grammatical construction of the compound sentence is also good common sense. All of the drilling or reworking clause must be applied, if it is to be applied at all. This includes the sixty-day limit which is an integral part of that clause. It means that when there is the right to drill or rework, that operation must be done in that stated time. It means that the right to drill or rework was not intended to be within the stated time in one instance but within a reasonable time in the other. The exercise of the right and the time limit to do it are both necessary parts of the whole.

The habendum has two events which maintain the lease in force, the ten-year

---

2. F. Watkins, W. Dillingham, E. Martin, Practical English Handbook 65 (4th ed. 1974); G. Leggett, C. D. Mead, W. Charvat, Prentice Hall Handbook for Writers 75, 77 (7th ed. 1978); W. Herman, Portable English Handbook 158 (1978); D. Fear, S. Schiffhors, Short English Handbook 151 (1979).

3. Kierzek, The MacMillan Handbook of English (3d ed. 1954).

4. Wooley and Scott, College Handbook of Composition 72 (4th ed. 1944).

term and production after that term. Both of those events are also terminating factors. It is not reasonable to hold that the lessor and lessee intended, as Sun says and the court of civil appeals has held, that the two terminating events stated in the habendum clause should be treated differently with respect to the drilling or reworking clause. Sun says that the drilling or reworking clause applies to operations in progress at the end of the primary term, but it is not applicable to the other terminating event, the cessation of production during the secondary term. It says that the sixty-day requirement for drilling or reworking to keep a lease alive applies to operations at the end of the primary term, but has no application to operations required upon the cessation of production during the secondary term. It says that the parties, while intending to avoid the rule of reasonable temporary cessation as to operations in progress at the end of the primary term, still intended that the rule of temporary cessation would apply with respect to operations when production stops during the secondary term. Sun says that the parties intended a specific limit of sixty days for one-half of the habendum clause, but intended an uncertain period of time which can be determined by a fact-finder for the other half of the habendum clause.

The court of civil appeals has held, and Sun seeks to uphold that decision, that the drilling or reworking clause appended to the habendum clause applies exclusively to operations at the end of the primary term. 607 S.W.2d at 49. We do not agree. That construction would require our reading out of this lease, and those like it, the drill or rework clause which expressly entitles Sun to drill entirely new wells during the secondary term after production has ceased. The reasonable and common-sense meaning of the clause is that the whole drilling or reworking clause, including its sixty-day limit for the operations, must be applied to the whole habendum clause.

Both Samano and Sun cite many of the same cases. This is so, because this court has not previously addressed this question. But, this court has never held that a specific time limit for drilling or reworking operations, stated as a part of the habendum clause and required to keep a lease alive, applies exclusively to the operations at the end of the primary term and has no application to operations required to keep a lease alive upon cessation of production during the secondary term. Precedents about leases that state no time for drilling or reworking operations are not helpful. In those cases, of course, the rule of reasonable temporary cessation applies. *See, Amoco Production Co. v. Braslau*, 561 S.W.2d 805 (Tex. 1978); *Midwest Oil Corp. v. Winsauer*, 159 Tex. 560, 323 S.W.2d 944 (Tex.1959); *Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783 (1941); *Stuart v. Pundt*, 338 S.W.2d 167 (Tex.Civ.App.—San Antonio 1960, writ ref'd); *Scarborough v. New Domain Oil & Gas Co.*, 276 S.W. 331 (Tex.Civ.App.—El Paso 1925, writ ref'd w.o.j.).

*Gulf Oil Corporation v. Reid*, 161 Tex. 51, 337 S.W.2d 267 (1960), was also factually different, because this court held that there had never been any production, actual or constructive, during either the primary or secondary term.

*Woodson Oil Company v. Pruett*, 281 S.W.2d 159 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.), relied upon by Samano, is also not controlling, because the habendum clause and the continuous drilling clauses are couched in different terms.

There have been some cases which hold that the drilling or reworking clause with an express time limitation applies to operations actively in progress at the end of the primary term. *See, Citizens Nat. Bank of Emporia v. Socony Mobil Oil Co.*, 372 S.W.2d 718 (Tex.Civ.App.—Amarillo 1963, writ ref'd n.r.e.); *Skelly Oil Company v. Harris*, 163 Tex. 92, 352 S.W.2d 950 (1962); *Phillips Petroleum Co. v. Rudd*, 226 S.W.2d 464 (Tex.Civ.App.—Texarkana 1949, no writ), and *Duke v. Sun Oil Company*, 320 F.2d 853 (5th Cir. 1963). That, too, is not our present problem.

There are some decisions, however, which have applied the whole of the drilling or reworking clause to the whole habendum

clause in the same manner that this court has applied it to that part which related to operations at the end of the primary term. *Sunray DX Oil Company v. Texaco, Inc.*, 417 S.W.2d 424 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.), had these very similar provisions in the habendum and the "drilling or reworking" clause:

"3. This lease shall remain in force, unless terminated as hereinafter provided, for the term of five years (hereinafter called the 'primary term'), and so long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them, is produced hereunder in paying quantities."

"7. * * * if after the discovery of oil or gas in paying quantities the production thereof should cease from any cause, this lease shall not terminate if the lessee commences additional drilling or reworking operations within thirty days thereafter * * * "

The lease was dated October 23, 1951, and production extended the lease beyond the primary term until December 12, 1962. The lessee did not commence drilling or reworking operations within thirty days. The court held, as we now hold in this present case:

Also, the terms of the lease prevent the application of the temporary cessation doctrine in this case. The above quoted habendum clause being expressly subject to the thirty-day drilling or reworking clause, all production having ceased, and no drilling or reworking operation having been commenced within the thirty-day period, the lease terminated.

*Hall v. McWilliams*, 404 S.W.2d 606 (Tex. Civ.App.—Austin 1966, writ ref'd n.r.e.), was another case which held that a lease terminated when production ceased during the secondary term, and the lessee failed to commence drilling or reworking operations within sixty days. In *Wainwright v. Wainwright*, 359 S.W.2d 628 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n.r.e.), the court refused to apply the temporary cessation rule because there was a failure to resume operations within sixty days after a well ceased to produce during the secondary

term. Quoting from *Woodson Oil Co. v. Pruett, supra*, the court held in response to the claim that the cessation of production was temporary: "This might be true under the terms of some leases, but under the lease here the parties agreed and stipulated what would constitute temporary cessation."

Professor Kuntz has discussed this problem and agrees with this analysis:

If the clause is of the type that is combined with the habendum clause and provides "and so long thereafter as oil or gas is produced from the land or the premises being developed or operated," *it has an apparently broad purpose of preserving the lease during operations as well as during production without regard to whether the operation began during the primary term or began after its expiration.* Accordingly, such clause should be construed to preserve the lease while the lessee continues to conduct operations, regardless of when the operation began so long as it began while the lease was in effect. [Emphasis added.]

4 Kuntz, Oil and Gas § 47.4, at 121 (1972). He would construe the lease provision to permit drilling or reworking operations so long as the lease was in effect, whether it be during the primary term or during the secondary term when the lease is preserved by production. That is the common-sense meaning of the contract that would protect the mutual interests of both the lessors and lessees. The sixty-day provision is an integral part of the drilling or reworking provision affording a known time for commencing drilling or reworking operations, while the contract is in effect during the secondary period. Neither precedent nor sound reason exists for striking down that agreement.

When production stopped on May 4, 1977, during the secondary period, Sun had an express sixty days to drill or rework the well. When it failed to do so, the lease by its express terms automatically terminated. The judgment of the trial court was a correct one.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

Dissenting Opinion by DENTON, J., in which McGEE and BARROW, JJ., join.

DENTON, Justice, dissenting.

I dissent. I am convinced the majority opinion has not correctly construed the habendum clause of the Samano oil and gas lease. The habendum clause reads:

2. Subject to the other provisions herein contained, this lease shall remain in force for a term of ten (10) years from this date, called "primary term," and as long thereafter as oil, gas or other mineral is produced from said land, or as long thereafter as Lessee shall conduct drilling or reworking operations thereon with no cessation of more than sixty consecutive days until production results, and if production results, so long as any such mineral is produced.

The object and purpose intended by the parties must be considered when construing an oil and gas lease. *Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509, 512 (1942). To determine intent, each provision must be accorded its reasonable, natural, probable meaning when considered in relation to the entire contract. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957); *Jones v. Killingsworth*, 379 S.W.2d 362, 367 (Tex.Civ.App.—Tyler), *rev'd on other grounds*, 403 S.W.2d 325 (Tex.1964). The primary intent of the parties was to secure and continue production of oil and gas during and after the primary term. Samano argues when the lease was signed the parties knew that production would cease in the primary or secondary term. He submits the sixty day clause is to assure preservation of the lease following cessation of production and is intended to limit the time when the lessee must start operations if production stops after the primary term.

I do not agree with Samano's construction of the habendum clause. The first phrase, "subject to other provisions herein contained," does not bear on the issue because the lease contains no other terms relating to extension of the lease into the secondary term. The second phrase sets forth the primary term of ten years. The third phrase, "and as long thereafter as oil, gas and other mineral is produced from said land," relates to extension of the lease beyond the primary term by production. This case involves construction of the fourth phrase, "or as long thereafter as lessee shall conduct drilling or reworking operations thereon with no cessation of more than sixty consecutive days until production results . . . ." The word "or" in its ordinary use is disjunctive. Absent a compelling reason apparent from the context of the instrument, "or" should be read as disjunctive, not conjunctive. *Shell Petroleum Corp. v. Royal Petroleum Corp.*, 135 Tex. 12, 137 S.W.2d 753, 758 (1940); *Reynolds v. Park*, 521 S.W.2d 300, 309 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.); *Morrison v. Swaim*, 220 S.W.2d 493, 495 (Tex.Civ.App.—Eastland 1949, writ ref'd n.r.e.).

A disjunctive expresses an alternative. The "or" phrase parallels the preceding phrase; it relates to and modifies the phrase stating the primary term. Thus, there are two ways to extend the lease beyond the primary term—1) production from the lease or 2) conduct of drilling or reworking operations at the end of the primary term which result in production.

The Samanos urge that "cessation" refers to production in the secondary term. The word "cessation" appears in the drilling and reworking clause. In context, cessation refers to operations, not production.

The habendum clause provides two methods for extending the lease beyond the ten year primary term. These are production, or drilling or reworking operations at the end of the primary term which result in production, provided there is no cessation of operations for more than sixty consecutive days. The sixty day language is not intended to prescribe the maximum period of nonproduction in the secondary term during which the lessee must start drilling or reworking operations. I would hold the court of civil appeals correctly construed the habendum clause.

Samano relies on four cases involving sixty day operations clauses. In *Woodson Oil Company v. Pruett*, 281 S.W.2d 159 (Tex. Civ.App.—San Antonio 1955, writ ref'd n.r. e.), an oil and gas lease was executed for a primary term of five years. A well was completed during the primary term and the lease was extended by production. Production ceased for more than sixty days during the secondary term and the lessors brought suit alleging the lease had terminated. The lease provided:

> Subject to the other provisions herein contained, this lease shall be for a term of five (5) years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder, or drilling or re-working operations are conducted thereon.
>
> If at the expiration of the primary term, Lessee is conducting operations for drilling a new well or re-working an old well, or if after the expiration of the primary term, production on this lease shall cease, this lease nevertheless shall continue as long as said operations continue or additional operations are had, which additional operations shall be deemed to be had where not more than Sixty (60) days elapse between abandonment of operations on one well and commencement of operations on another well, and if production is discovered this lease shall continue as long as additional operations are had.

*Id.* at 162. Woodson Oil Company contended the cessation of production was tempo-

rary and it should have been entitled to a "reasonable" time to resume production. The court of civil appeals rejected this argument. It held the parties had stipulated the maximum period of temporary cessation and the lease had terminated because additional operations were not commenced within sixty days of cessation of production. *Id.* at 164–165. Although *Woodson* is factually similar to the present case, the lease provisions materially differ. The *Woodson* lease specifies the maximum period during which production could cease in the secondary term before additional operations had to be commenced. The Samano lease provides only for cessation of operations in progress at the end of the primary term and is silent as to cessation of production in the secondary term.

In *Gulf Oil Corporation v. Reid*, 161 Tex. 51, 337 S.W.2d 267 (1960), a gas well was begun several days before expiration of the primary term. It was completed in the secondary term, but production was not commenced because there was no pipeline connection. The well was capped and Gulf tendered shut-in gas payments to the lessor thirty-two days later. The lessor rejected the payments claiming the lease terminated because there was no production or tender of shut-in payments at the expiration of the primary term. Gulf sought to invoke two sixty days clauses to preserve the lease.[1] The first became operative upon cessation of production after the primary term. *Id.* at 269. The second provides, if, at the end of the primary term, oil or gas is not being produced, but the lessee is drilling or re-

---

1. Subject to the other provisions herein contained, this lease shall be for a term of Five (5) years from this date (called primary term) and as long thereafter as oil, gas or other mineral is produced from said land hereunder, or as long as drilling or reworking operations are being conducted on said land as is hereinafter provided.

   If cessation of production occurs at any time after the expiration of the primary term, then this lease shall not terminate if Lessee, until production is again procured, does not allow more than sixty (60) days to elapse between the cessation of production and the commencement of additional drilling or reworking operations in a bona fide effort to again obtain pro-

duction, and successive attempts may be made so long as not more than sixty (60) days are allowed to elapse between the completion or abandonment of one well and the commencement of operations on another until production is again obtained. If, at the expiration of the primary term, oil, gas or other mineral is not produced from the land then covered hereby, but Lessee is then engaged in operations for drilling or reworking operations on some part of the land hereunder, this lease shall not terminate if Lessee does not allow more than sixty (60) days to elapse between the abandonment of one well and the commencement of drilling or reworking operations on another until production is obtained.

working, the lease will not terminate if no more than sixty days elapse between abandoning operations on one well and beginning operations on another. *Id.* This court held the lease terminated for lack of production and failure to tender shut-in payments timely. We further held neither sixty day clause applied because (1) there was never production and (2) there was never an abandonment. Again, the *Reid* lease made specific provision for cessation of production during the secondary term.

In *Skelly Oil Company v. Harris*, 163 Tex. 92, 352 S.W.2d 950 (1962), the facts are similar to *Reid* but involved different lease provisions. Drilling operations were commenced during the primary term and a well was completed in the secondary term. The well was capped awaiting pipeline connection. Production began forty-one days later. The lease provides in the event oil or gas is not being produced at the end of the primary term, but the lessee is engaged in drilling or reworking operations, the lease will be extended if operations were conducted with no cessation of more than sixty consecutive days.[2] *Id.* at 950. This court held the lease extended by operations under the sixty day clause. *Id.* at 954. *Duke v. Sun Oil Company*, 320 F.2d 853 (5th Cir. 1963), was similar to *Skelly*. The Fifth Circuit, applying Texas oil and gas law, reached the same result as this court in *Skelly*. It held the sixty day clause extended the lease beyond the primary term for sixty days unless there is production or tender of shut-in payments. *Id.* at 861. The sixty day clause is an integral part of the habendum clause and is identical to the habendum clause in the Samano lease.

2. Subject to the other provisions herein contained, this lease shall remain in force for a term of ten years from this date,

called primary term, and as long thereafter as oil, gas or other mineral is produced from said land, or as long thereafter as Lessee shall conduct drilling or reworking operations thereon with no cessation of more than sixty consecutive days until production results, and if production results, so long as any such mineral is produced.

In both *Skelly* and *Duke* drilling operations were in progress during the primary term but there was no production. At the end of the primary term the sixty day clauses operated to extend the lease into the secondary term. Neither case involved cessation of production in the secondary term. None of these cases support Samano's argument that the sixty day language in the habendum clause operated to prescribe the maximum period of non-production in the secondary term before additional drilling or reworking operations had to be commenced in order to preserve the lease.

An oil and gas lease automatically terminates upon permanent cessation of production after expiration of the primary term. *Amoco Production Co. v. Braslau*, 561 S.W.2d 805, 808 (Tex.1978); *Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783, 784 (1941). When cessation of production is temporary, the lessee has a reasonable time to resume production unless the lease specifies the maximum period of non-production considered temporary. *Amoco Production Co. v. Braslau, supra* at 808; *Watson v. Rochmill, supra* at 784. What constitutes temporary cessation is a question of fact. *E. g., Midwest Oil Corp. v. Winsauer*, 159 Tex. 560, 323 S.W.2d 944, 948 (1959) (174 days); *Stuart v. Pundt*, 338 S.W.2d 167, 169 (Tex. Civ.App.—San Antonio 1960, writ ref'd) (3–4 months); *Scarborough v. New Domain*

---

2. Subject to the other provisions herein contained, this lease shall be for a term of ten years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.

If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith.

*Oil & Gas Co.*, 276 S.W. 331, 336 (Tex.Civ. App.—El Paso 1925, writ ref'd w.o.j.) (4 months). The cases allowing a reasonable time to resume production, following a temporary cessation, involved leases that do not contain specific drilling or reworking clauses applicable when production ceases in the secondary term. The Samano lease does not specify the maximum period of non-production regarded as temporary during the secondary term. The sixty day language in the lease pertains only to cessation of operations in progress at the end of the primary term. I would hold Sun Oil was entitled to a reasonable period of time following cessation of production to commence operations to restore production.

The judgment of the court of civil appeals should be affirmed.

McGEE and BARROW, JJ., join in the dissenting opinion.