**VEGA PETROLEUM CORPORATION,**
Appellant,

v.

**James B. HOVEY et ux, Appellees.**

**No. 5465.**

Court of Civil Appeals of Texas,
Eastland.

July 24, 1980.

Rehearing Denied Aug. 21, 1980.

W. B. Browder, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, for appellant.

Robert J. Patterson of Latham & Patterson, Corpus Christi, for appellees.

DICKENSON, Justice.

The landowners, James B. Hovey and Oladell Jenkins Hovey, sued Vega Petroleum Corporation, owner of an oil and gas lease on the Hovey's land, seeking damages for royalties which were alleged to have been lost because of Vega's failure to drill an "offset well." Following a trial by jury, judgment was rendered on the jury's verdict that the Hoveys recover $139,251.00. Vega appeals. We affirm.

The verdict of the jury can be summarized as follows:

1. Gas from the Hoveys' land has been drained through Vega's Gloria No. One well.

2. A reasonably prudent operator would have drilled a well on the Hoveys' land to prevent drainage of gas from the Hoveys' land after the Gloria No. One began to produce gas.

3. Vega failed to develop the Hovey lease for production of gas as a reasonably prudent operator would have done under the same or similar circumstances.

4. A reasonably prudent operator would have drilled a well on the Hoveys' land to develop said land for production of gas after the Gloria No. One began to produce.

5. A reasonably prudent operator would have drilled and completed a well for production of gas on the Hoveys' land by June 30, 1977.

6. A new well on the Hoveys' land would have produced 278,502 MCF of gas from the date of first production through the date of trial.

7. The total market value of all gas which would have been produced from a new well on the Hoveys' land from the time of first production through the date of trial was $557,004.00.

Since it was stipulated that the Hoveys were entitled to royalties of 25% of production, judgment was rendered that they recover $139,251.00 for royalties lost because of drainage due to Vega's failure to drill a well "offsetting" the Gloria No. 1 well, which was producing from the adjacent ranch. We note that the total sum found in answer to issue seven is equal to $2.00 per MCF for the volume of gas found in answer to issue six. We also note that on the first day of trial, Vega released the Hoveys' lease, except for 40 acre tracts around its two producing wells on the Hoveys' ranch.

 Vega's appeal presents "no evidence" and "insufficient evidence" challenges to each issue answered by the jury. Under the test stated in *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, at 265 (Tex. 1974), we find that there is evidence to support each finding. We also find that the evidence is factually sufficient to support the jury's verdict and that the verdict is not "so against the great weight and preponderance of the evidence as to be manifestly unjust." *In re King's Estate*, 244 S.W.2d 660 (Tex.1951). The jury was the exclusive judge of the disputed facts. Neither the trial court nor the appellate court is authorized to substitute its judgment for that of the jury when, as here, there is evidence from which the jury could have believed either side's version on the disputed issues. *Benoit v. Wilson*, 239 S.W.2d 792 (Tex.1951).

The Hoveys' lease was executed on June 26, 1975, covering tracts 6, 7, 8, 9, 11, 12 and 20, as shown on the plat attached to this opinion as Appendix "A." Vega Petroleum Corporation acquired the lease and drilled its first well, Peter Carpenter No. 1, on tract 11 of the Hovey lease. It was completed in three production zones. Vega's second well, Poca Tienda No. 1, was drilled on tract 5, near the Hovey lease. It was plugged and abandoned. Vega's third well, Hovey No. 1, was drilled on tract 7 of the Hovey lease. It was completed in two production zones. Vega's fourth well, Benavides No. 1, was drilled southwest of the Hoveys' lease. It was plugged and abandoned. Vega's fifth well, Gloria No. 1, was drilled on tract 13, south of the Hoveys' lease. It was completed in two producing zones. Vega's sixth well, Polis No. 1, was drilled on tract 19, near the Hovey lease. It was completed in three producing zones. Vega's seventh and final well, Benavides No. 3, was drilled southwest of the Hoveys' lease. It was completed in one producing zone.

The Hoveys insist that gas from their land is being drained by the Gloria No. 1. Vega is just as positive that there is no drainage of gas from the Hoveys' land by that "offset" well. The Gloria No. 1 is 875 feet south of the Hoveys' property line. The oil and gas lease specifically provides that if oil or gas is produced in commercial quantities by a well situated within 1,000 feet of the Hoveys' land, "and draining this leased premises," the lessee shall within 90 days begin the drilling of an offset well to prevent drainage. The record is clear that the Gloria No. 1 is producing gas in paying quantities and that it is within 1,000 feet of the Hoveys' land. The disputed issue is whether it is draining gas from the Hoveys' land.

 Two expert witnesses testified for the Hoveys that in their opinion there was drainage of gas from the Hoveys' lease through the Gloria No. 1. One expert witness testified for Vega that there was no drainage.

Each expert supported his position with lease maps, structural contour maps, isopach maps, electrical logs and production records. There was also evidence of two maps prepared by Vega's chief geologist, which showed that in 1957 when he drew those maps (See issue 5, supra), he believed that two of the production zones in the Gloria No. 1 extended across the Hovey lease to the Polis No. 1.

The Hoveys' consulting geologist, O. E. Schellhase, testified that he graduated from the University of Texas in 1951, served as district geologist for Houston Natural Gas Corporation from 1952 to 1959, did geology work on retainer for one client from 1959 to 1964, and then went to work on his own. He assisted Vega on leasing and developing their leases in the area shown on Appendix "A." He actually participated in the geological work on Vega's first four wells. During the trial, he drew an isopach map for the jury, showing the upper production zone connected from the Gloria No. 1 across the Hovey lease to the Polis No. 1.

The Hoveys' petroleum engineer, Herman J. Wettegrove, testified that he entered the University of Texas in 1940 and graduated in 1948 after serving in the army. He went to work for the Railroad Commission's Oil and Gas Division from 1948 until 1952 when he was called back into the army for duty in Korea. He has been in private engineering work since 1953. He has reviewed the electrical logs and core data for the wells drilled in the area involved in this lawsuit. He checked the production history on each well, and he reviewed the records which Vega furnished. He testified that the upper production zone was present in the Gloria No. 1 and in the Polis No. 1 and that in his opinion, the sand extended across the Hoveys' ranch and connected those two wells. He testified that the sand "has a good chance" of extending across the Hoveys' land, and he defined this as "a good probability." His opinion was that the Gloria No. 1 was draining the Hovey lease from the upper production zone and possibly from the lower zone as well. His opinion was that an offset well should have been commenced "not later than 60 days" after the initial production from the Gloria No. 1 and that it could have been completed within 90 days. He spotted the proposed "offset" well on tract 20, directly between the Gloria No. 1 and the Polis No. 1, saying that it should have been in production by June 1, 1977. His opinion was that "the probability would be good that we get the same type of well that the Gloria well was." Then, he calculated the probable production of gas from such a well. He used the Railroad Commission reports filed by Vega on its production in this area, and he calculated total production of 307,970 MCF of gas. The jury cut that figure to 278,502 MCF. He also testified that the market value of gas in that area is $2.00 per MCF. In his opinion, Vega could have made a profit on the well. He testified as to drilling costs and other bases for that opinion.

Vega's expert witness, Roy C. Williamson, is a petroleum consultant who received two degrees from the University of Oklahoma in 1956 and 1957, one in petroleum engineering and the other in geologic engineering. His opinion was that the production zones under the Gloria No. 1 and Polis No. 1 were not connected and that the production zone was not present on the Hovey lease, at the offset location, in paying quantities. His opinion was that there was no drainage.

The jury resolved the experts' disagreement. The testimony of Schellhase and Wettegrove is legally and factually sufficient to support the jury's verdict.

The only way to put the landowners in the position they would have been put by performance of Vega's obligation to drill the well is to award them damages measured by the value of their lost royalty. *Guardian Trust Co. v. Brothers*, 59 S.W.2d 343 (Tex.Civ.App.–Eastland 1933, writ ref'd); 3 Summers, Oil & Gas § 433 (Vernon Supp.1980); Annotation, "Right and Measure of Recovery for Breach of Obligation to

Drill Exploratory Oil or Gas Wells," 4 A.L.
R.3d 284, 299 (1965).

Our Supreme Court stated in *Texas Pacific Coal & Oil Co. v. Barker*, 6 S.W.2d 1031 (Tex.1928):

> The rule which permits a lessor to recover damages for a lessee's breach of covenant to protect or develop oil or gas land rests on the assumption that it can be shown with reasonable certainty that the lessor has been deprived of the value of his portion of at least a certain quantity of oil or gas, worth a certain amount, which the lessee would have produced had he exercised proper diligence.

In this case, the Hoveys met that burden by opinion testimony from qualified expert witnesses.

The judgment of the trial court is affirmed.

APPENDIX A