**SUN OIL COMPANY et al., Appellants,**

**v.**

**George SAMANO, Individually and as Independent Executor of the Estate of Rodolfo B. Samano, Deceased et al.**

**No. 1348.**

Court of Civil Appeals of Texas, Tyler.

Oct. 9, 1980.

Rehearing Denied Nov. 6, 1980.

Richard A. Hall, Gary, Thomasson, Hall & Marks, Lev Hunt, Clayton J. Hoover, Kleberg & Weil, Corpus Christi, for appellants.

Michael Kendrick, Jr., Head, Kendrick & Head, Corpus Christi, for appellees.

MOORE, Justice.

Appellants' motion for rehearing is granted. Our opinion heretofore delivered on June 26, 1980, is withdrawn and the following is substituted in lieu thereof.

This is an appeal from a summary judgment which had the effect of declaring that an oil and gas lease terminated by its own terms and conditions.

Appellee, George Samano, and numerous other lessors, brought suit against appellants, Sun Oil Company, et al, lessees, for a declaratory judgment seeking to have the trial court declare that an oil and gas lease covering 1,795.58 acres of land in Starr County, Texas, had terminated in accordance with the terms thereof. The cause was presented before the trial court upon a motion for summary judgment filed by lessor Samano and others. After a hearing the trial court rendered a summary judgment in favor of the lessors holding that the lease had terminated on July 16, 1977. Appellants, Sun Oil Company, et al, duly perfected this appeal.[1]

We reverse and remand.

---

1. Upon joint motion of appellant, Buttes Resources Company and appellees, this court severed the cause of action as between those parties and reversed and remanded that portion of the case for settlement.

The controversy between the parties concerns the proper construction of the habendum clause of the Samano lease in light of certain events taking place in May, June and July of 1977. The habendum clause is found in paragraph 2 of the lease and reads as follows:

2. Subject to the other provisions herein contained, this lease shall remain in force for a term of ten (10) years from this date, called "primary term," and as long thereafter as oil, gas or other mineral is produced from said land, or as long thereafter as Lessee shall conduct drilling or reworking operations thereon with no cessation of more than sixty consecutive days until production results, and if production results, so long as any such mineral is produced.

The lease was originally executed on March 29, 1934, for a primary term of ten years. A well was drilled on the land during the primary term which resulted in the production of oil and gas and the lease was therefore maintained in force and effect beyond the primary term by the production of oil and gas until May 4, 1977, at which time production ceased. It is undisputed that from May 4, 1977, to July 15, 1977, a period of approximately seventy–three days, there was no production of oil or gas, and that none of the lessees conducted any drilling or reworking operations on the land covered by the lease. The summary judgment proof shows that the one producing well on the lease was producing six barrels of oil on May 3. On May 4 oil production ceased because of mechanical problems which involved either a leak in the tubing or subsurface pumping problems. While waiting to be worked over, the well was shut in on May 20, 1977. On July 18, the well was reworked, the tubing was pulled and a pump was installed. On July 22 or 23, the well commenced producing gas.

Thus, the summary judgment proof establishes nothing more than that there was no production and no drilling or reworking operations on the lease for a period of approximately seventy–three days. No contention is made that the evidence establishes as a matter of law, or without dispute, that there had not been production in paying quantities beyond July, or that the time required to restore production was unreasonable. There being cessation of production with no reworking operations for a period of sixty days, appellees relied exclusively on the proposition that the lease terminated by its own express terms. Apparently, the trial court concluded that the habendum clause amounted to an agreement between the parties that in the event of cessation of production during the secondary term of the lease, the lessees were required to restore production within sixty days in order to keep the lease in force and effect.

Appellants assert that the trial court erred in construing the habendum clause to mean that a cessation of production, for a period of sixty days, during the secondary term of the lease resulted in an automatic termination of the lease when there was neither production nor drilling or reworking operations conducted thereon during that sixty–day period. It is their contention that the function of the sixty–day clause was to extend the primary term of the lease for a period of sixty days in the event there was no production at the end of the ten–year primary term. They maintain that the habendum clause, when properly interpreted, does not require the lessee, during the secondary term of the lease, to commence drilling or reworking operations within sixty days after a cessation of production in order to maintain the lease in effect; rather, they say that since the lease is silent in that regard the lessee is afforded a reasonable time in which to commence such operations following a cessation of production.

The ultimate question presented is whether the habendum clause in question provided for automatic termination during the secondary term upon a cessation of production where no drilling or reworking operations were conducted on the lease for a period of sixty days. The habendum clause is required by its own terms to yield to any and all other provisions which affect the duration of the lease. There are, however,

no "other provisions" in the lease which relate to the lapse or continuation of the lease during its secondary term. Therefore, we must look to the habendum clause alone in order to determine whether the parties agreed to an automatic termination during the secondary term in the event of cessation of production for a period of sixty days without drilling or reworking operations.

■ The first phrase of the habendum clause, "subject to other provisions herein contained," does not bear on the issue presented because there are no other provisions in the lease relating to termination or continuation of the lease during its secondary term. The second phrase of the habendum clause, "this lease shall remain in force for a period of ten years from this date, called 'primary term,'" is likewise of no consequence here since the primary term had long since expired. The third phrase, "and as long thereafter as oil, gas or other mineral is produced from said land," obviously relates back to the primary term of ten years. Up to this point, the lease simply states that it will continue in force for ten years "and as long thereafter as oil, gas or other mineral is produced from said land."

The clause "or as long thereafter as lessee shall conduct drilling or reworking operations thereon with no cessation of more than sixty consecutive days until production results, and if production results, so long as any such mineral is produced," modifies that part of the habendum clause which states that the lease "shall remain in force for a period of ten years from this date." As we construe it, the habendum clause says nothing more than that the lease is for a term of ten years "and" as long after that term as oil, gas or other minerals or other mineral is produced "*or* as long thereafter (i. e., after the ten–year primary term) as lessee shall conduct drilling or reworking operations thereon with no cessation of more than sixty days until production results." (Emphasis added.) As we interpret the clause in question, the word "thereafter" refers exclusively to the end of the primary term. Further, we believe the word "cessation" refers exclusively to drilling or reworking operations and not to cessation of production. In cases construing similar language, the word "cessation" has been held to refer exclusively to a cessation of drilling or reworking operations. *Skelly Oil Co. v. Harris*, 352 S.W.2d 950 (Tex.1962); *Phillips Petroleum Co. v. Rudd*, 226 S.W.2d 464 (Tex.Civ.App.–Texarkana 1949, no writ).

Further, we believe that the use of the disjunctive word "or" in the habendum clause makes it clear that the sixty–day phrase was not intended as a limitation for restoration of production during the secondary term. The habendum clause provides that the lease shall remain in force for ten years from March 29, 1934, that is, until March 29, 1944, "and" as long thereafter as oil, gas or other mineral is produced, "or" as long thereafter as lessee shall conduct drilling or working operations with no cessation of more than sixty days until production results. The use of the disjunctive "or" is significant. It has been held that the term "*or*" in its ordinary use is disjunctive, and alternative in its effect and unless there is some compelling reason apparent in the context, it should be given its ordinary, rather than a conjunctive meaning. *Shell Petroleum Corp. v. Royal Petroleum Corp.*, 135 Tex. 12, 137 S.W.2d 753 (1940); *Reynolds v. Park*, 521 S.W.2d 300, 309 (Tex.Civ. App.–Amarillo 1975, writ ref'd n. r. e.). *Morrison v. Swaim*, 220 S.W.2d 493 (Tex. Civ.App.–Eastland 1949, writ ref'd n. r. e.).

The second phrase of the habendum clause, "or as long thereafter as lessee shall conduct drilling or reworking operations," expresses an alternative. The word "or" requires it to be construed as parallel to the phrase, "as long as oil, gas * * * is produced from said land." In this instance both parallel phrases are deemed to relate back to the phrase, "this lease shall remain in force for a term of ten years from this date, called primary term." Thus, two alternatives existed to the termination of the lease at the end of the primary term. One is production, the other is drilling or reworking operations, and the two are mutually

exclusive as they might apply to extend the lease beyond its primary term. Since the habendum clause was designed to extend the primary term in the event of nonproduction at the end of that term, the sixty-day clause cannot be construed to amount to an agreement between the parties that the lease would automatically terminate during the secondary term unless production was restored within sixty days. Consequently, we conclude that the trial court erred in declaring the lease had terminated under its own terms.

Appellants further urge that the summary judgment cannot be sustained on the theory that the habendum clause constituted an agreement between the parties that a cessation of production for a period of sixty days would amount to a permanent cessation of production which would automatically terminate the lease. In our view appellants' contention must be sustained.

■ It is well established in Texas that upon permanent cessation of production, after the expiration of the primary term, the lease automatically terminates. *Amoco Production Co. v. Braslau*, 561 S.W.2d 805 (Tex.1978); *Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783 (1941). It is likewise well established that an oil and gas lease which has been extended beyond its primary term by the production of oil and/or gas will not automatically terminate by reason of a temporary cessation of production. *Amoco Production Co. v. Braslau*, supra; *Midwest Oil Corp. v. Winsauer*, 323 S.W.2d 944 (Tex.1959); *Watson v. Rochmill*, supra; *Giles v. McKanna*, 200 S.W.2d 709 (Tex.Civ. App.–Austin 1947, writ ref'd n. r. e.).

As we construe it, the habendum clause neither sets out an agreed criteria for determining whether a particular period of nonproduction is temporary or permanent, nor does it contain any language which defines the maximum period of nonproduction which is to be regarded as temporary. Further there is no language in the lease which would remove the facts of this case from the operation of the general rule that a lessee is entitled to a reasonable period of time following cessation of production to commence operations to restore production.

Appellees argue that the summary judgment may be sustained on the basis of the holding in *Woodson Oil Co. v. Pruett*, 281 S.W.2d 159 (Tex.Civ.App.–San Antonio 1955, writ ref'd n. r. e.). We do not agree. That case involved a lease which contained a separate drilling and reworking clause which stated the maximum period of time which would constitute a temporary cessation of production. We find nothing in the Samano lease defining what would amount to a permanent or temporary cessation of production during the secondary term. Inasmuch as the lease in question does not define what would constitute temporary or permanent cessation of production, the summary judgment cannot be sustained on the theory that it expired by its own terms because of a permanent cessation of production.

■ In our view the lease is not ambiguous. When properly construed, the lease simply provides that it shall extend beyond the primary term only so long as production continues or, if drilling or reworking operations are in progress at the end of the primary term, then so long as such operations continue with no cessation of more than sixty days. The word "cessation" as used in the habendum clause refers exclusively to cessation of drilling or reworking operations and not to cessation of production.

In summary, we hold that the trial court's implied finding that the lease expired by its own terms, as a matter of law, is not supported by the record.

Accordingly the judgment is reversed and the cause is remanded.

McKAY, Justice, dissenting.

I respectfully dissent. I cannot agree with the conclusion of the majority that the oil and gas lease here under consideration did not terminate under its own provisions under the admitted and undisputed facts of this case.

Fundamental among the rules of construction for oil and gas leases is the re-

quirement that the intention of the parties be ascertained and given effect, and the conclusion reached as to such intention of the parties must be gathered from the four corners of the instrument. *Gibson v. Turner,* 294 S.W.2d 781, 783 (Tex.1956).

"* * * it appears to be the settled rule in this state that of two or more equally reasonable constructions of which the language of an oil and gas lease is susceptible the one more favorable to the lessor will be allowed to prevail." *Zeppa v. Houston Oil Co. of Texas,* 113 S.W.2d 612, 615 (Tex.Civ.App.–Texarkana 1938, writ refused)

The legal effect of an oil and gas lease should not be determined alone from a single word, or clause or part of the instrument, but from every pertinent part and effect given to all its language. 42 Tex. Jur.2d Oil and Gas § 165, pages 349–50. It is not the form but the substance of the agreement and intent of the parties that is important.

This court said in *Jones v. Killingsworth,* 379 S.W.2d 362, 367 (Tex.Civ.App.–Tyler 1964, reversed on other grounds, 403 S.W.2d 325 (Tex.1965)) that it is the duty of the court to ascertain the intention of the parties, according each provision its reasonable, natural and probable meaning when considered in relation to the entire lease.

It is my view that it was the intention of the parties in making the subject lease that the lease would remain in force for a ten year primary term, *and* as long thereafter as oil, gas and other mineral are produced, *or* if production of oil, gas and other minerals ceased, then so long thereafter as lessee shall conduct drilling or reworking operations thereon with no cessation of such operations for more than sixty days. The result of such an intention would cause the lease to continue in force after the expiration of the primary term provided there was production, but if there was no production, then the lessee would have sixty days in which to commence drilling or reworking operations, or failing to do so, the lease would terminate. The only time limitation placed upon drilling or reworking was that

there could not be a cessation of such operations for more than sixty days unless production was restored.

I do not agree that the lessee had "a reasonable time" after production ceased to commence drilling or reworking operations; to the contrary the parties agreed that the lessee had sixty days to begin such operations after production ceased. It is my view that the parties had also agreed that sixty days was to be the extent of any temporary cessation of production inasmuch as lessee was obligated to begin drilling or reworking operations within sixty days after production ceased, or the lease would terminate. The lease expired not because there was a permanent cessation of production but because of the failure of the lessee to comply with the terms of the lease. *Woodson Oil Co. v. Pruett,* 281 S.W.2d 159, 162 (Tex.Civ.App.–San Antonio 1955, writ ref'd n. r. e.)

In the *Pruett* case the court said:

"Appellants next contend that the cessation of production on the lease was sudden and only temporary, and that under such circumstances they were entitled to a reasonable time in which to remedy the defect and resume production. This might be true under the terms of some leases, but under the lease here the parties agreed and stipulated what would constitute temporary cessation. The lease provides, in effect, that if production should cease the lessee must commence re–working or additional operations within sixty days or the lease would terminate. If the cessation of production is more than sixty consecutive days it is not to be regarded as temporary under the terms of this lease. If reworking or additional operations are not begun within the sixty–day period the lease terminates by its own provisions."

In the light of the facts and circumstances of this case it is my view that the lessee was not justified in its failure to commence operations within the sixty day period. In *Francis v. Pritchett,* 278 S.W.2d 288, 290 (Tex.Civ.App.–El Paso 1955, writ refused), where provisions of the lease were similar

to those here, the court held that resumption of drilling operations was expressly required in the event production ceased or terminated for any reason to keep the lease in force, and since it was not done the lease ipso facto terminated.

In *Sunray DX Oil Co. v. Texaco, Inc.*, 417 S.W.2d 424 (Tex.Civ.App.—El Paso 1967, writ ref'd n. r. e.) the language of the lease there was:

"3. This lease shall remain in force, unless terminated as hereinafter provided, for the term of five years (hereinafter called the 'primary term'), and so long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them, is produced hereunder in paying quantities."

"7. * * * if after the discovery of oil or gas in paying quantities the production thereof should cease from any cause, this lease shall not terminate if the lessee commences additional drilling or reworking operations within thirty days thereafter * * *."

The court held at page 428:

"Also, the terms of the lease prevent the application of the temporary cessation doctrine in this case. The above quoted habendum clause being expressly subject to the thirty–day drilling or reworking clause, all production having ceased, and no drilling or reworking operation having been commenced within the thirty–day period, the lease terminated. *Adams v. Cannan*, Tex.Civ.App., 253 S.W.2d 948, err. ref., n. r. e.; *Woodson Oil Company v. Pruett*, Tex.Civ.App., 287 S.W.2d 159, err. ref., *Haby v. Stanolind Oil and Gas Company*, 5 Cir., 228 F.2d 298; *Wainwright v. Wainwright*, Tex.Civ. App., 359 S.W.2d 628, err. ref., n. r. e."

In *Hall v. McWilliams*, 404 S.W.2d 606 (Tex.Civ.App.—Austin 1966, writ ref'd, n. r. e.) the lease provided " * * * if after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or re–working operations within sixty (60) days thereafter * * *." The court held at page 608: "Under the terms of the lease the court was correct in

holding that the cessation of production for more than 60 days was not temporary."

I would affirm the judgment of the trial court.