Lee SHELTON et al., Appellants,

v.

H. Frank TAYLOR et al., Appellees.

No. 5555.

Court of Civil Appeals of Texas, Eastland.

April 23, 1981.

Rehearing Denied May 14, 1981.

Clyde W. Woody, Houston, for appellants.

J. Alan Gray, Rentzel, Wise & Gray, Dallas, Steve Suttle, McMahon, Smart, Wilson, Surovik & Suttle, Robert M. Rutledge, Rutledge, Rutledge & Connally, Roger Garrett, Abilene, for appellees.

DICKENSON, Justice.

The controlling question is whether a 1948 oil and gas lease terminated when production ceased for more than 30 days in 1972. It was stipulated that the lease and the term royalty interests were extended through 1971 by production, and there is evidence of continuous production from June of 1972 through the date of trial.

Plaintiffs, Lee Shelton and wife, Erma Shelton, sued all of the parties who owned or claimed any interest in the lease and the owners of term royalty interests, seeking a judgment declaring that the lease had terminated and other relief. Following a trial by jury, judgment was rendered on the verdict that Plaintiffs take nothing and declaring that the oil and gas lease is in full force and effect. Plaintiffs appeal. We affirm.

The controlling issues may be summarized as:

1. During 1972 production in commercial quantities ceased on the lease in question.

2. Such cessation of production was temporary.

3. Oil and gas wells on adjacent property are not draining condensate, gas or oil from under Plaintiffs' land.

6. Dallas International Bank did not fail to develop the lease in the manner in which a reasonably prudent operator would under the same or similar circumstances.

8. Plaintiffs knowingly recognized, ratified and confirmed the validity of the oil and gas lease.

Plaintiffs have briefed 15 Points of Error. Point 1 argues that the trial court erred in overruling Plaintiffs' objection to the question regarding the price paid for their 648 acre ranch. Any error in this ruling was harmless error under Tex.R.Civ.P. 434. Before the objection was made Lee Shelton had testified on direct examination that he bought the property in 1971 and that it was subject to the oil and gas lease involved in this lawsuit. He also testified that he had run over 600 head of cattle. Plaintiffs also proved the price which Humble was paid for its assignment of the lease in question. There is also evidence of Plaintiffs' royalty income from the property. Plaintiffs' expert gave opinion testimony of past drainage of oil and gas worth $1,427,511.35 and future loss of oil and gas worth $2,760,120.00. Plaintiffs' expert also estimated a cost of $200,000 per well for the six wells which he felt should be drilled. Point 1 contends that reversible error is shown by the following:

Q (Mr. Suttle): How much did you pay per acre for that land?

A (Mr. Shelton): I figured I don't have to give my personal deal here in the Court.

OBJECTION (by Mr. Shelton's lawyer): Your Honor, we will object to that question as being immaterial in the matter pending before the Court.

RESPONSE (by Mr. Suttle): I think it will be material, Your Honor, in demonstrating the benefits that the man has received from the property, and showing the magnitude of those benefits.

CONTINUED OBJECTION (by Mr. Shelton's lawyer): The amount he paid for the property is immaterial.

THE COURT: I will overrule the objection. There are no secrets here. Overrule the objection. You may answer.

Q (Mr. Suttle): How much did you pay for the property, Mr. Shelton?

A (Mr. Shelton): The fact of the business, I would have to go and look and see. I don't remember.

Q (Mr. Suttle): Just the approximate amount?

A (Mr. Shelton): Oh, $125.00 or $100.00 an acre, somewhere around there.

There was no proof as to whether the property was purchased for cash or on credit, and we hold that the objection that the amount paid for the land by Plaintiffs was "immaterial" does not preserve the objection which they seek to raise for the first time on appeal, that "It is improper to contrast the wealth of the parties in a suit, in an effort to prejudice the jury against one of such parties." Moreover, Plaintiffs have not discharged their burden of showing that the jury's knowledge that Plaintiffs paid $64,800 to $81,000 for the land "was reasonably calculated to cause and probably did cause the rendition of an improper judgment" as required by Tex.R. Civ.P. 434.

Points 2, 3 and 4 challenge the jury's answer to Special Issue No. 2. Points 5, 6 and 7 challenge the jury's answer to Special Issue No. 3. Points 8, 9 and 10 challenge the jury's answer to Special Issue No. 6. Under the test stated in *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, at 265 (Tex. 1974), we find that there is evidence to support Special Issues 2, 3 and 6. Consequently, Points 2, 5 and 8 are overruled. We also find that the evidence is factually sufficient and that those answers are not "so against the great weight and preponderance of the evidence as to be manifestly unjust." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The jury was the exclusive judge of these disputed facts. Neither the trial court nor the appellate court is authorized to substitute its judg-

ment for that of the jury when as here, there is evidence from which the jury could have believed either side's version on the disputed issues. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Consequently, Points 3, 4, 6, 7, 9 and 10 are overruled.

As to the temporary cessation of production, we note that the Railroad Commission records for 1972 show the following production of oil under the disputed lease:

| | | |
|---|---|---|
| January | 244 | bbls |
| February | 228 | bbls |
| March | 27 | bbls |
| April | 0 | bbls |
| May | 1 | bbl |
| June | 230 | bbls |
| July | 259 | bbls |
| August | 225 | bbls |
| September | 274 | bbls |
| October | 344 | bbls |
| November | 249 | bbls |
| December | 284 | bbls |

There is testimony that the pump on the well failed and that the lessee sold the lease to another operator who restored the production.

*Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783, at 784 (1941), states in its discussion of an oil and gas lease:

It appears to be very well settled that under the terms of the lease, upon cessation of production after termination of the primary term, the lease automatically terminates.... The strictness of the above rule has been modified where there is only a *temporary cessation of production* due to sudden stoppage of the well or some mechanical break down of the equipment used in connection therewith, or the like. Under such circumstances there are authorities which hold that the lessee is entitled to a reasonable time in which to remedy the defect and resume production. (Emphasis added; authorities omitted)

*Amoco Production Company v. Braslau*, 561 S.W.2d 805, at 808 (Tex.1978), discussing the "determinable fee" of a term royalty which is analogous to the "determinable fee" of an oil and gas lease, stated:

(I)f "production" ceases, the interest terminates by its own terms. The courts

have ingrafted upon that concept the holding that temporary cessation of production will not trigger the extinction of the interest.

See also *Stuart v. Pundt*, 338 S.W.2d 167 (Tex.Civ.App.—San Antonio 1960, writ refused), *Casey v. Western Oil & Gas, Inc.*, 611 S.W.2d 676 (Tex.Civ.App.—Eastland 1980, writ filed), and R. Hemingway, The Law of Oil and Gas § 6.4(B) (1971).

Plaintiffs rely on the dissenting opinion in *Sun Oil Company v. Samano*, 607 S.W.2d 46 (Tex.Civ.App.—Tyler 1980, writ granted). While we think the majority opinion in *Samano* is correct, that case is factually distinguishable from this case. In *Samano* the sixty-day reworking provision was in the same sentence as the lease term's definition. In this case the lease term is defined, after the property description and before the lessee's covenants and agreements, in the following language:

It is agreed that this lease shall remain in force for a term of 10 years from this date, and as long thereafter as oil, gas or casinghead gas, or either of them is produced from said land by lessee in commercial quantities.

On the next page of the lease, after the royalty provision, delay rental agreements, and offset well and development agreements, the lease states:

If at the expiration of the primary term, oil, gas or other minerals (sic) is not being produced on said land but Lessee is then engaged in drilling or reworking operations thereon, the lease shall remain in force for so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days, and if they result in the production of oil, gas or other minerals (sic), so long thereafter as oil, gas or other mineral (sic) is produced from said land.

We hold that the continuous operations provision does not modify the lease agreement as to its term. Consequently, the general rule stated in *Watson v. Roch-*

**916**

*mill*, supra, and *Amoco Production Company v. Braslau*, supra, is applicable. That rule supports the judgment of the trial court. We note that the trial court correctly instructed the jury that "temporary cessation" means "cessation of production due to sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith, or the like, accompanied by such time as is reasonably necessary for a prudent operator to reinstate production with due diligence." The jury's finding of "temporary" cessation of production is supported by the evidence, and the trial court correctly held that the oil and gas lease is in full force and effect.

Concerning the question of drainage, Plaintiffs' expert testified to extensive drainage; however, Defendants' experts testified that there was little or no drainage and that additional development was not needed. The jury resolved the experts' disagreement. The testimony of John R. Thompson (petroleum engineer), Dorman Farmer (geologist), Frank Conselman, Ph.D. (geologist), and R. John Catlett (petroleum engineer) is legally and factually sufficient to support the jury's verdict as to drainage and reasonable development. See the authorities discussed in *Vega Petroleum Corporation v. Hovey*, 604 S.W.2d 388 (Tex. Civ.App.—Eastland 1980, no writ).

Point 11 challenges the submission of Special Issue No. 8. This point is overruled because there was no timely objection to the submission of this issue. Moreover, any error is harmless in view of the jury's answer to Special Issue No. 2. Since the temporary cessation of production did not cause the lease to terminate under our Supreme Court's holdings in *Rochmill* and *Braslau*, the jury's finding of ratification is immaterial. Consequently, any error in the submission of the issue as to ratification would be harmless under the test stated in Tex.R.Civ.P. 434.

Point 12 asserts reversible error because the trial court permitted two lawyers for one Defendant to cross-examine the same witness. This point is overruled because Tex.R.Civ.P. 265(g) permits the trial court to grant leave for more than one counsel on each side to examine or cross-examine the same witness. Moreover, there is no showing of prejudice under Tex.R.Civ.P. 434.

Points 13 and 14 complain about the introduction of certain exhibits into evidence, and Point 15 argues that the cumulative effect of the asserted errors require reversal of the trial court's judgment. These points of error are also overruled. Most of the exhibits were cumulative of other evidence. The exhibits from the business records of Permian Corporation were properly admitted under Tex.Rev.Civ.Stat. Ann. art. 3737e (Vernon Supp. 1980). There is no showing of reversible error in accordance with the requirements of Tex.R.Civ.P. 434.

The judgment of the trial court is affirmed.